IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Alex D. Taylor, | ) | C/A No.: 1:11-1479-TLW-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Thierry Nettles, Major; Leslie Davis, Lieutenant; V. Stafford, Sergeant; and Barry Robinson, Corporal, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Alex D. Taylor ("Plaintiff"), proceeding *pro se* and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by Thierry Nettles, Leslie Davis, V. Stafford, and Barry Robinson (collectively "Defendants") while incarcerated in the custody of the South Carolina Department of Corrections ("SCDC") at Lieber Correctional Institution ("LCI"). This matter is before the court on Defendants' Motion for Summary Judgment. [Entry #31]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.     Factual and Procedural Background

At approximately 1:35 a.m. on November 18, 2012, nurse Jennifer Scott was delivering medication to inmates in the Max-A-wing and was being escorted by officers. Nettles Aff., ¶¶ 12–14 [Entry #31-4]. According to Defendants and undisputed by Plaintiff, while the detention officer was turned away, Plaintiff reached through his cell

window and grabbed Nurse Scott's rear end. *Id.* at ¶ 17. Nurse Scott stepped away from Plaintiff's cell and the officer closed Plaintiff's cell window. *Id.* at ¶ 18. ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■[1]■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■ Plaintiff remained in the restraint chair for four hours, after which he was removed and escorted to his cell by the officers. *Id.* at 5. The video Defendants submitted shows that during his placement in and removal from the restraint chair, Plaintiff did not resist. No officers struggled with or injured Plaintiff, and he was examined by a nurse.

Once Plaintiff was removed from the restraint chair, officers placed him in a control cell, which actionwas approved by Nettles. Nettles Aff., ¶¶ 19–20 [Entry #31-4].

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[1] Defendants provided a copy of the video to the court.

Before being placed back in his cell, Plaintiff's personal items were removed by officers. Compl. at 5 [Entry #1]. Plaintiff remained in the control cell for three days. *Id*. After three days, Plaintiff's personal property was returned to him and the prison officials explained to him why he had been placed in a restraint chair and control cell. *Id*. at 5–6.

Defendants filed their motion for summary judgment on February 21, 2012. [Entry #31]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #32]. Plaintiff filed a timely response in opposition to Defendants' motion on March 6, 2010 [Entry #36]. This matter being fully briefed, it is now ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge deny Defendants' motion for summary judgment.

II.  Discussion

  A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden,

then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

1. Use of the Restraint Chair

It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the

moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of ... breaches of prison discipline." *Id.* at 322.

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

In the instant case, Defendants have failed to show that a use of force through the restraint chair was necessary. ▌ ▌ ▌ According to Defendants, the behavior that warranted discipline occurred at approximately 1:35 a.m. and the restraint chair was not used until 2:35 a.m. Netlles Aff., ¶¶ 8, 12–14 [Entry #31-4]. Additionally, by Defendants' own recitation of the facts, Plaintiff did not resist placement in the restraint chair and no officers struggled with Plaintiff during the process. Defs. Mot. at 2–3. As it does not appear the use of the restraint chair was necessary, it similarly is unclear why Plaintiff was left in the restraint chair for four hours. It does not appear any physical injury resulted from Defendants' use

of force, although Plaintiff claims he suffered mental anguish and continues to suffer from anxiety attacks. Compl. at 5 [Entry #1]. Defendants have provided no information related to the extent of the threat they perceived Plaintiff to pose to the safety of the staff or other prisoners. Finally, it appears from the video provided that Defendants tempered the force used to place Plaintiff in the restraint chair, although it does not appear they tempered the amount of time Plaintiff remained in the chair. On balance of the *Whitley* factors, the undersigned is constrained to recommend denial of Defendants' motion for summary judgment related to their use of a restraint chair for Plaintiff, as they have not shown that force was necessary or that Plaintiff posed an imminent danger to the safety of the staff or other inmates.

2. Use of the Control Cell

After being removed from the restraint chair, Plaintiff was placed in a control cell for 72 hours. While in the control cell, he was allowed one pair of underwear,[2] but was otherwise without all personal property. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Fourth Circuit has held that "'isolation from companionship, restriction on intellectual stimulation, and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render that confinement unconstitutional absent other

---

[2] Plaintiff asserts that he was without a blanket, and Defendants have not directly disputed this allegation. [Entry #1 at 5].

illegitimate deprivations.'" *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (quoting *Sweet v. South Carolina Dept. of Corrections*, 529 F.2d 854, 861 (4th Cir. 1975) (en banc)). However, here Plaintiff claims that he was without a blanket, contrary to SCDC policy, "with the air-conditioning on full blast." [Entry #1 at 5]. Plaintiff therefore appears to allege he was denied a basic human need for warmth. While placement in a control cell does not usually constitute cruel and unusual punishment, an issue of fact remains under the circumstances of this case as to whether Defendants' placement of Plaintiff in a control cell without a blanket violated his constitutional rights. Therefore, the undersigned recommends Defendants' motion for summary judgment be denied with regard to Plaintiff's placement in a control cell.

### 3. Qualified Immunity

Defendants assert, to the extent Plaintiff's constitutional rights were violated, they are entitled to qualified immunity. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello,* 973 F.2d at 298.

A question of fact exists as to whether Defendants violated Plaintiff's constitutional rights in the use of restraint chair and placement in a control cell without a blanket. As many of Plaintiff's allegations, if true, may violate both SCDC policies and clearly established law, such conduct cannot be characterized as a bad guess in a gray area of the law. Thus, Defendants are not entitled to summary judgment on the basis of

qualified immunity.

III.     Conclusion

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment be denied.

IT IS SO RECOMMENDED.

June 26, 2012                                                    Shiva V. Hodges
Columbia, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).